## QUIMBY & ROGAN *vs.* BOSTON & MAINE RAILROAD.

January Term, 1899.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, THOMPSON and
WATSON, JJ.

Opinion filed May 6, 1899.

*Cattle Guard—V. S. 3871, 3877.*—Under V. S. 3871 and 3877 railroads are
bound to maintain cattle guards at all road crossings sufficient to
prevent cattle and animals from getting upon the track, and are liable for
damages to the same done by their agents or engines, if occasioned by
want of such guards, whether such animals are upon the road crossing
lawfully or not. Such is the logical result of *Harwood* v. *Bennington
& Rutland R. R.*, 67 Vt. 664, and all previous decisions contravened
hereby are overruled.

CASE. Heard on an agreed statement, at the December
term, 1898, Caledonia county, *Start*, J., presiding. Judgment
for the defendant. The plaintiff excepted.

*Bates*, *May & Simonds* for the plaintiff.

The plaintiffs are entitled to judgment if (1) the duty of
the defendant to maintain sufficient cattle guards was
absolute, or (2) the mare was unlawfully upon the road
crossing, or (3) the case *Harwood* v. *Bennington & Rutland
R. R. Co.*, 67 Vt. 664, is sound.

*Harry Blodgett* and *John Young* for the defendant.

If the plaintiff's theory is sound, this case presents the
peculiar conditions in which the owner or keeper of the
mare is liable to a fine of twenty dollars under § 3879, by
reason of the mare being "found going at large within the
limits of a railroad after the same is opened for use," and is
also "liable for damages thereby sustained by any person,"
by reason of the mare being at large upon the railroad; and
on the same facts the defendant is liable to the owner or
keeper of the mare for her value. Supposing that by this
collision the engine had been derailed and ruined, would not

the owner or keeper of the mare have been liable to the defendant, under this section, for the damage to the engine?

It is no answer to this position to say that the mare "escaped without the knowledge of the plaintiffs or their servants."

The statute makes "the person through whose fault or negligence such horse or other beast is so at large," liable.

This mare was at large for one or both of two reasons. Either the mare was breachy and a jumper, or the pasture fence was insufficient. If the mare was a jumper it was the fault or negligence of the plaintiffs that she was turned out to pasture. If the fence around the pasture was insufficient, this was equally the fault of the plaintiffs.

The owners of domestic animals are bound, at their peril, under the laws of this State, to keep their animals at home. *Wilder* v. *Wilder*, 38 Vt. 678.

The decisions in this State, construing and applying the statutes relating to railroad fences and cattle guards, clearly relieve the defendant from any liability, for the death of this mare on the facts stated. *Trow* v. *Vt. Central R. Co.*, 24 Vt. 487. In that case the horse strayed from the highway where it was running at large with the owner's consent and knowledge. The court held that the negligence of the plaintiff in letting his horse run in the highway without restraint, defeated his recovery, even though defendant had not built either fence or cattle guards. *Jackson* v. *Rutland & Burlington R. Co.*, 25 Vt. 150, 155–160; *Morse* v. *Rutland & Burlington R. Co.*, 27 Vt. 49; *Bemis* v. *Conn. & Pass. R. Co.*, 42 Vt. 375; *Congdon* v. *Cent. Vt. Railroad Co.*, 56 Vt. 390, 395.

To the same effect are the cases in Massachusetts: *McDonnell* v. *Pittsfield & N. A. R. Co.*, 115 Mass. 564; *Eames* v. *Salem & Lowell R. Co.*, 98 Mass. 560; *Maynard* v. *Boston & Maine R. Co.*, 115 Mass. 458.

In New Hampshire: *Towns* v. *Cheshire R. Co.*, 21 N. H. 363. That case is very similar to the case on trial. It holds

that the mare was not lawfully on the highway. *Cornwall v. Sullivan R.*, 28 N. H. 161, 167, (168, 170, 172 and 173) fully endorses the Jackson case above cited.

In New York: *Tonawanda R. Co.* v. *Munger*, 5 Denio 255. In Maine: *Perkins* v. *The Eastern and B. & M. R.*, 29 Me. 307. In Pennsylvania: *N. Y. & Erie* v. *Skinner*, 19 Penn. 298. In Rhode Island: *Tower* v. *Providence & Worcester Railroad*, 2 R. I. 404. In New Jersey: *Vandegrift* v. *Rediker*, 22 N. J. L. (2 Zab.) 185.

The plaintiff in the trial below relied upon *Smith* v. *Barre R. Co.*, 64 Vt. 21; *Wait* v. *Bennington & Rutland R. Co.*, 61 Vt. 268; *Harwood* v. *Bennington & Rutland R. Co.*, 67 Vt. 664. We fail to see wherein either of these cases militates against the doctrine of the cases above cited, or aids the plaintiff in the case at bar. In *Smith* v. *Barre R. Co.*, the horse was legitimately in the field adjoining the railroad track, from which he escaped to the tracks by reason of the lack of a fence which the railroad company were bound to build and maintain against said field because it was an adjoining field. The whole farm of an adjoining proprietor, under this law must be treated as one field, because the railroad company has no right to object to an adjoining owner pasturing his whole farm if he so elects. This case is strictly in accordance with the cases above cited. In the case of *Wait* v. *Bennington & Rutland R. Co.*, the plaintiff was driving his team along the highway. His horses became unmanageable, and escaped from his master, while being driven along in the highway for a legitimate purpose, and ran upon the railroad. In *Harwood* v. *Bennington & Rutland R. Co.*, the servant of the owner was leading the horse along the highway for a legitimate purpose, and while being so led, the horse broke away from the servant and ran upon the railroad.

Each of these cases turns upon the fact that the horse was being rightfully driven or led on the highway when it escaped from the control of the owner or servant. In each

case the animal went rightfully on the highway and under restraint.

THOMPSON, J.   During the night of July 5, 1897, without the knowledge of the plaintiffs or their servants, their mare escaped from their pasture, on the "Meserve farm" so called, in St. Johnsbury, at some place not known, into an adjoining mowing field belonging to this farm, and passed from it through an open driveway into the public highway, and after travelling about at large on the highway for about half a mile, passed over a cattle guard in the defendant's railroad where it crossed the highway at grade, and went along the railroad track for some distance and was struck by an engine of the defendant, and so injured as to be worthless and for that reason was killed.   The defendant was without fault in the management of its engine at the time the mare was injured.   This highway crossing was not on the "Meserve farm," and the cattle guard was not sufficient to prevent animals from getting upon the railroad.   The pasture from which the mare escaped was fenced.

The defendant contends that the mare was not lawfully upon the highway; that it is not bound to maintain cattle guards at highway crossings of its railroads sufficient to prevent cattle and animals, not lawfully upon the highway, from getting upon its railroad track, and that consequently the judgment below in its favor was correct.   In support of this contention it relies upon several decisions of this court in respect to the duty of railroads to build and maintain fences along the line of their roads.

On the other hand, the plaintiffs insist that under the holding of this court in *Harwood* v. *Bennington & Rutland R. R. Co.*, 67 Vt., 664, they are entitled to recover for the injury to the mare.   In that case the facts so far as can be gathered from the opinion were these:   While the horse of the plaintiff's intestate was being led along the highway by one Houghton, in whose care it had been placed, it escaped

and ran over a defective cattle guard to the defendant's railroad track, and was there killed. In defence, evidence was offered tending to show that the horse escaped and went at large through the negligence of Houghton, and that this negligence contributed to the accident. This evidence was excluded, and the decision of the county court was sustained by this court. Its decision was put upon the ground that "the statute having made it the duty of the defendant to maintain a cattle guard at the point where the horse escaped from the highway and went upon its track sufficient to prevent horses from getting upon its track, and declared for its neglect to do so it should be held liable for all damages done by its agents and engines, if occasioned by such neglect, the question of whether Houghton was negligent in leading the horse along the highway in the manner he did was immaterial." If the horse escaped through the negligence of Houghton and thus went at large upon the highway, from the moment of its escape, it was unlawfully upon the highway. Hence the logical result of this decision is that railroads are bound under the provisions of V. S. 3871 and 3877, to construct and maintain cattle guards at all road crossings sufficient to prevent cattle and animals from getting on the railroad, and that they are liable for damages done by their agents or engines to cattle, horses or other animals, if occasioned by the want of such cattle guards, without regard to whether such cattle, horses or other animals are lawfully on such road crossing or not. There is no occasion to recede from this decision. It conforms to the express and unambiguous language of the statute. This statute was intended to protect travellers riding in trains on railroads, from accidents that might occur by reason of animals being at large upon the railroad track for want of sufficient cattle guards at road and farm crossings, as well as to compensate owners for cattle injured for want thereof. So far as this case contravenes the cases previously decided by this court relating to this subject, it overrules them.

This view of the case renders it unnecessary to decide whether the mare of the plaintiffs was lawfully or unlawfully upon the highway.

*Judgment reversed, and judgment for the plaintiffs to recover two hundred dollars damages and their costs.*