Filed 06/23/25

VERMONT SUPERIOR COURT

Grand Isle Unit
PO Box 7
North Hero VT 05474
802-372-8350
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-01642

Andrew Stewart, et al v. Peregrine Contracting, Inc., et al

## ORDER ON MOTION FOR SUMMARY JUDGMENT

This is a homeowner-contractor dispute. Defendants Peregrine Contracting, Inc., and Timothy Frost moved for summary judgment in this matter. Plaintiffs Andrew and Shyla Stewart oppose the motion. The Court grants the motion in part and denies it in part.

## Relevant Background

On April 28, 2024, Plaintiffs filed a three-count complaint. See Compl. (filed Apr. 28, 2024). In Count One, Plaintiffs allege that Defendants were negligent in constructing the roof on the house between 2003 and 2006. *Id.*, at ¶¶ 29–32 (Count 1—Negligence). Although not alleged in the complaint, both Defendants and Plaintiffs address in their filings an allegation that Defendants negligently caused more damage to that same roof in 2023 when they uncovered the roof of the home during an inspection and did not re-cover it. *Id.* (Count 1—Negligence in 2023); Pl's.' Opp. (filed Mar. 28, 2025) at 4.

Plaintiffs also allege breach of contract. *Id.*, at ¶¶ 33–36 (Count 2). According to Plaintiffs, Defendants breached their contract with the prior owners, the Toors, by failing to carry out the required work in a proper manner, causing damages to the house. *Id.* And although Plaintiffs admit they were not a party privy to that contract, they assert that the Toors assigned any of their potential claims against Defendant Peregrine to Plaintiffs in 2024. *Id.*, at ¶ 36; Pl's.' SMFD (filed Mar. 28, 2025) at ¶¶ 27–29.

Lastly, Plaintiffs allege that Defendants Peregrine and Frost committed fraudulent misrepresentation by making material representations to Plaintiffs that were knowingly false.

According to Plaintiffs, Defendants denied responsibility for the defects in the roof while knowing that it was, in fact, Defendants' defective construction that caused the alleged damage. *Id.*, at ¶¶ 37–39 (Count 3).

On July 8, 2024, Defendants filed an answer denying the allegations. See Answer (filed Jul. 8, 2024). On March 12, 2025, Defendants moved for summary judgment on all claims. See Mot. Summ. J. (filed Mar. 12, 2025); Def's.' SUMF (filed Mar. 12, 2025).

### Undisputed Material Facts

The following material facts are not disputed. Plaintiffs purchased the property at issue in this lawsuit on December 14, 2020, from the Toors. SUMF, at ¶¶ 2–3. The Toors had owned the property since at least 2003. *Id.*, at ¶ 4. Between the years 2003 and 2006, the Toors contracted Defendant Peregrine to remodel the property. *Id.*, at ¶ 5. The remodel project included rebuilding a roof. *Id.*, at ¶ 6. Defendant constructed the roof between 2003 and 2006. *Id.*, at ¶ 7.

Around January 2023, Plaintiffs discovered water damage in the kitchen below the deck constructed as part of the remodel project. *Id.*, at ¶ 10. In Plaintiffs' view, it was Defendants' defective construction of the roof that caused the water damage. *Id.*, at ¶ 11. After having discovered the extent of the damage, Plaintiffs notified Defendants Peregrine and Frost, and asked them to make free repairs. *Id.*, at ¶ 13. Defendants inspected the damage but did not agree to make the repairs. *Id.*, at ¶¶ 14–15. Defendants expressed to Plaintiffs that it was improper maintenance by the Toors that caused the damage. *Id.*, at ¶ 17.

In the process of examining the roof, Defendants did not replace the protective roof membrane and, in so doing, exposed the roof to rain and snow, causing further damage. *Id.*, at ¶¶ 18, 20, 22–23.

On April 25, 2024, the Toors, the original party to the contract with Defendants, assigned their contract claims against Defendant Peregrine to Plaintiffs. *Id.*, at ¶¶ 27–29.

On summary judgment, Defendants argue that Plaintiffs' 2003–2006 negligence claim fails because they owed no duty to Plaintiffs and the 2023 negligence fails because the resulting damage is the same as the alleged damage that resulted from the 2003–2006 negligence. Plaintiffs argue in response that the economic loss rule generally should not apply in this case.

Defendants then argue that the breach of contract claim fails because Plaintiffs were not privy to the contract between the Toors and Defendants and that any purported assignment is legally defective. Def's.' Mot. Summ. J. at 11–14; Def's.' Reply at 9–12. See also *id.*, at 11 ("[D]amage to the property in 2023 cannot have injured the Toors years after they no longer owned it—the Toors would not have constitutional standing to sue Peregrine for damage to a property they did not own.") (citations omitted). Plaintiffs respond by arguing that the Toors validly assigned them any claims against Defendants.

Lastly, Defendants argue that Plaintiffs' fraudulent misrepresentation claim fails because (1) in stating to Plaintiffs that it was the improper care of the Toors rather than defective construction that caused the damage to the roof, Defendants provided a nonactionable statement of opinion, not a statement of fact, and (2) the allegedly fraudulent statement did not induce Plaintiffs to take any action or a change their position, and so Plaintiffs could not have relied on the statement to their detriment. Def's.' Mot. Summ. J. at 15. Plaintiffs do not specifically respond to the fact versus opinion argument, but do contend that as a consequence of Defendants' false statements, they sought the services of other contractors to fix the alleged defects.

Analysis

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." V.R.C.P. 56(a). A fact is material only if it might affect the outcome of the case. *O'Brien v. Synnott*, 2013 VT 33, ¶ 9, 193 Vt. 546. In assessing whether a dispute as to any material fact is genuine, courts construe "the facts presented in the light most favorable to the nonmoving party." *Vanderbloom v. State, Agency of Transp.*, 2015 VT 103, ¶ 5, 200 Vt. 150. "[T]he nonmoving party receives the benefit of all reasonable doubts and inferences." *Pettersen v. Monaghan Safar Ducham*

*PLLC*, 2021 VT 16, ¶ 9, 214 Vt. 269.  Courts, therefore, "accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Robertson v. Mylan Laboratories, Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356.  The nonmoving party, however, "may not rest upon the mere allegations or denials in its pleadings, 'but … must set forth specific facts showing that there is a genuine issue for trial.'" *White v. Quechee Lakes Landowners' Ass'n, Inc.*, 170 Vt. 25, 28 (1999) (quoting V.R.C.P. 65(e)).

I. Negligence Between 2003 and 2006 – Count One

"[C]ommon law negligence has four elements: a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury." *Stopford v. Milton Town Sch. Dist.*, 2018 VT 120, ¶ 12, 209 Vt. 171 (quotation and alteration omitted). "The existence of a duty is a question of law … decided by the court." *Sorge v. State*, 171 Vt. 171, 174 (2000).  A negligence action fails where the plaintiff has not pled facts that, if true, could establish that the defendant had a duty of care to the plaintiff. *Smith v. Day*, 148 Vt. 595, 597 n. 1 (1987).

Before the Court can reach the question of duty, "a legal relationship must be alleged between parties[.]" *Fleurrey v. Dep't of Aging & Indep. Living*, 2023 VT 11, ¶ 16, 217 Vt. 527.  "This duty must be one owed directly to [plaintiff], or to a class to which he belongs." *Amblo's Adm'x v. Vermont Associated Petroleum Corp.*, 101 Vt. 448 (1929).  Where a particular act involves a breach of duty to a third-party but not to the injured party, the injured party does not have a claim. *Id.*

Plaintiffs here allege that Defendant Peregrine was negligent between 2003 and 2006 in constructing the roof on a house then owned by the Toors.  The only legal relationship inherent in these facts is one between Defendants and the Toors.  As a matter of fundamental logic, Defendants could only have owed a duty to the Toors, the owners of the house who recruited Defendants to perform construction on the house between 2003 and 2006.  See *id.* ("Alleging foreseeable harm cannot create a legal relationship between parties who, in the eyes of the law, are strangers, and then retroactively extend a duty from the one legal stranger to the other.").  Because the Court concludes that Defendants owed Plaintiffs no duty of care between 2003 and 2006, the portion of Count one related to that time period fails as a matter of law.

## II. Negligence in 2023 – Count One

The parties agree that Plaintiffs' first count also includes a negligence claim based on Defendants' having uncovered the roof in 2023 while inspecting it. Plaintiffs allege that Defendants left the first floor of the house exposed to further water damage and instructed others not to recover the roof. For purposes of this motion, Defendants do not dispute those allegations.

The parties here had no contract or agreement in effect in 2023. The Vermont Supreme Court has recognized that that a legal duty may arise when a person "undertakes, gratuitously or for consideration, to render to another services that the person should recognize as necessary to protect the other." *Sabia v. State*, 164 Vt. 293, 302–03 (1995) (citing Restatement (Second) of Torts § 323 (1965)). A person "is subject to liability for physical harm resulting from negligent performance of the undertaking if (1) the negligence increases the risk of harm, or (2) the harm results from the other's reliance upon the undertaking." *Id.* (citing Restatement (Second) of Torts § 323 cmt. a). This "applies whether the harm results from the defendant's negligent performance of the undertaking, or from the defendant's failure to exercise reasonable care to complete the undertaking or to protect the other person when the undertaking is discontinued." *Id.* "[T]he undertaking may not be discontinued when the danger of harm to the other person increased as a result of the undertaking, or because the other person, in reliance upon the undertaking, was induced to forego other opportunities of obtaining assistance." *Id.* (citing Restatement (Second) of Torts § 323 cmt. c.).

Here, Defendants undertook to gratuitously render a service for Plaintiffs—to inspect the roof. In tending to Plaintiffs, Defendants were presumably acting to protect Plaintiffs' interest. Failing to reseal the roof and instructing others not to reseal it are actions sufficient to create a duty along the lines laid out in the Restatement.

Defendants also argue that if Defendant Frost did fail to seal the roof after inspecting it, the record contains no evidence to distinguish the damage that had been occurring because of the defective construction of the roof between 2003 and 2006, and the damage that was occurring as a result of removing the roof seal in 2023.

This is, however, fundamentally not so.  The record, albeit not Plaintiffs' response to Defendants' statement of undisputed facts specifically, contains evidence that taken in the light most favorable to Plaintiffs, catalogues damage that could clearly be the result of the 2023 roof inspection. See Affidavit of Andrew Stewart (filed Mar. 28, 2023), at ¶¶ 9–16. See also V.R.C.P. 56(c)(5) ("The court need consider only the materials cited in the required statements of fact, but it may consider other materials in the record."); *Zorn v. Smith*, 2011 VT 10, ¶ 22, 189 Vt. 219 (noting that although pro se litigants are bound by the ordinary rules of civil procedure, they do receive some leeway from the courts).  As such, Defendants are not entitled to judgment as a matter of law on Plaintiffs' Count One as related to the alleged negligence in 2023.

III. Breach of Contract – Count Two

Although Plaintiffs concede that they were not privy to the 2003–2006 contract between Defendants and the Toors, they assert that the Toors assigned their contract claim against Defendant Peregrine to Plaintiffs on April 25, 2024.  Defendants do not dispute that an assignment purportedly occurred, though they disagree that as a matter of law the Toors could have assigned the claims.  At the time of the assignment, the Toors were no longer the owners of the house subject of the contract—Plaintiffs have been since 2020.  The legal question before the Court on summary judgment is therefore whether a former homeowner can assign a contract claim after having sold the house subject to the original contract.

Generally, contractual rights are assignable unless the substitution of assignee for assignor would materially affect the other party to the contract, the assignment is forbidden by statute or public policy, or the assignment is validly barred by contract. See Restatement (Second) of Contracts § 317 (1981).  But Defendants here argue that "[f]ormer homeowners cannot, years after they have sold their property, make a valid assignment of claims that relate to property they no longer own. Def.'s' Reply at 13 (citing *Litwin v. Timbercrest Estates, Inc.*, 347 N.E.2d 378, 380 (Ill. App. Ct. 1976).

There is no controlling Vermont case law on point here.  In *Litwin*, the Appellate Court of Illinois faced a construction dispute between a contractor and the current homeowners.  Those homeowners had purchased the property from the original owners who had the contract with

defendants. The original owners assigned their rights to plaintiffs and plaintiffs brought a lawsuit alleging breach of contract against the defendants. The complaint specifically alleged "a breach of the contract to construct the house for the [previous owners;]" principally the failure of the defendants to build in accordance with the requirements of the building code, and "that the cause of action for this breach had been assigned to plaintiffs by the [former owners]." *Litwin*, 347 N.E.2d at 379.

The *Litwin* court recognized that "inasmuch as plaintiffs were not parties to the original contract, their cause of action necessarily depends upon whether they acquired any rights against defendants by the … assignment [by the original owners] of the chose in action." *Id.* The Court's analysis hinged on the fact that "at the time of the sale to plaintiffs, the [former owners] were unaware of any building code violations or other defects in defendants' performance under the contract." *Id.*, at 381. The court concluded "that on the day of the assignment, the [former owners] had no actual or potential claim because of the alleged contract violations and that they had no chose in action which might be the subject of an assignment." *Id.*

This is not the only view among courts that have considered the issue. A Washington appellate court explains the opposite view. In *Carline v. Harbor Homes*, ten homeowners sought to sue the original developers of their homes. None were the original purchasers, and all had assignments from the original owners. The court noted the general assignability of claims. It further stated that "[b]ecause causes of action are personal property, the original purchasers here retained their legal interests in the claims against [defendant] up until the time they expressly assigned the claims to the homeowners." *Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 287 (Wash. Ct. App. 2008). The Court pointedly observed that there is a distinction "between the original purchasers' *present legal interest in the homes* when the assignments [are] executed and the original purchasers' *present legal interest in any claims* they [have] against [the defendants]." *Id. at* 287–88 (footnote omitted and emphasis added). Based on this distinction, the Court concluded that a former homeowner may validly assign a contractual claim related to defective construction even after having sold the home subject of the original construction contract. *Id.*

The Illinois court was focused on who owned the home at the time of the assignment, as opposed to whether a claim still existed and was assignable. The Illinois court failed to grapple

with the general assignability of claims in its analysis, and as a result, the Court finds the Washington court's analysis more persuasive.

No matter that the Toors had no legal interest *in the property* in 2024 when the purported assignment took place, they could have validly assigned a claim against Defendants to Plaintiffs—which they still ostensibly retained in 2024. The Toors' interest in any *claim* against Defendants was only extinguished in 2024 when the purported assignment to Plaintiffs took place.

Such a conclusion is also sound doctrinally and practically. Under Defendants' rule a contractor is off the hook for any potential breach of contract claim if an owner sells the house—but not if the owner keeps the home. The survival of a contractor's contractual duties to a homeowner should not depend on happenstance like when a home is sold.

Whether a claim under a contract is assignable depends on the intention of the parties. See *Abalene Pest Control Serv., Inc. v. Hall*, 126 Vt. 1, 6–7 (1966). Here the undisputed facts clearly show that the Toors intended to assign their claim against Defendants to Plaintiffs. The assignment is not prohibited under the Restatement's prohibition of assignments that negatively affect the other party to the contract. The only conceivable effect that can be divined from the assignment is a nominal change of the holder of the claim. Nor do public policy or general principles of contract law counsel in favor of barring the assignment here. See Restatement (Second) of Contracts § 317 (1981); *Carmichael v. Adirondack Bottled Gas Corp. of Vt.*, 161 Vt. 200, 208 (1993) ("An underlying principle implied in every contract is that each party promises not to do anything to undermine or destroy the other's rights to receive the benefits of the agreement.").

As such, viewing the facts in the light most favorable to Plaintiffs, Defendants are not entitled to judgment on Plaintiffs' Count Two.

### IV. Fraudulent Misrepresentation – Count Three

Defendants argue that the fraudulent misrepresentation claim "fails as a matter of law because: (i) it relies on an alleged statement of opinion and not of fact; and (ii) the allegedly fraudulent statement did not induce Plaintiffs to take any action[.]" Mot. Summ. J., at 15. Plaintiffs on the other hand argue that Defendants made several false statements to Plaintiffs (1)

regarding the condition of the roof, and (2) denied responsibility for the defective construction while knowing that the defect was in fact their responsibility. Pl's.' Opp. at 6.

Defendants are fundamentally correct that there is a difference between a statement of fact and a statement of opinion. "[M]isrepresentation of the former can be fraud, but misrepresentation of the latter cannot." *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 133 (1993). But as related to Count three, the motion is more simply resolved on Defendants' reliance argument. See *B & F Land Dev., LLC v. Steinfeld*, 2008 VT 109, ¶ 4, 184 Vt. 624 (implying that a court can grant summary judgment on any one ground raised by the parties).

A claim for fraud requires a party alleging it to plead that it relied on a false statement to its detriment. *Union Bank v. Jones*, 138 Vt. 115, 121 (1980). Failure to prove this element defeats the claim. *Estate of Alden v. Dee*, 2011 VT 64, ¶ 32, 190 Vt. 401. And so, while Plaintiffs allege that Defendants made false statements after inspecting the roof, nowhere in the record do they explain or indicate whether or how they relied on those statements. In other words, Plaintiffs do not explain a connection between any action (or refrain from action) they took as a result of Defendants' statements.

Interpreting the factual allegations in the record in the light most favorable to Plaintiffs, they at most allege that because of Defendants' statements that the damage to the roof was not Defendants' fault they were forced to hire other contractors and repairs took longer. This is incorrect. Plaintiffs were forced to hire other contractors because Defendants refused to do the work for free. Would Plaintiffs have acted differently had Defendants agreed the alleged damage was their fault, but stated that because it occurred so long ago no free repairs were in order? There is nothing in the record, to support an affirmative answer to that question. The action that caused Plaintiffs to hire other contractors was Defendants decision not to repair the roof for free, not their statements that the roof damage was not their fault. Plaintiffs have therefore insufficiently alleged reliance on any purportedly false statement. See *Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 15, 200 Vt. 465 (refusing to infer or assume reliance because reliance is an element of fraud that plaintiff must plead and prove with particularity).

As a final matter, the Court notes that Plaintiffs cite to the Vermont Consumer Protection Act for the proposition that they do not need to prove damages. Plaintiffs do not have a Vermont Consumer Protection Act claim in this case and the analysis is inapplicable to the core issue at hand in this count, reliance.

Defendants are entitled to summary judgment on Plaintiffs' Count three.

<u>Order</u>

Based on the foregoing, Defendants' motion is *granted in part* and *denied in part*. It is *granted* as to Count One (Negligence Between 2003–2006) and Count Three (Fraud). It is *denied* as to Count One (Negligence in 2023) and Two (Breach of Contract).

Electronically signed on June 20, 2025, pursuant to V.R.E.F. 9(d).

_____
Navah C. Spero
Superior Court Judge